## WILLIS JOHNSON COMPANY *v.*
### Charles L. DANIELS, Director of Labor and Ralph ROGERS

E 80-17                                          601 S.W. 2d 890

Court of Appeals of Arkansas
Opinion delivered June 18, 1980
Released for publication July 8, 1980

Appellant, *pro se*.

*Herrn Northcutt*, for appellees.

JAMES H. PILKINSON, Judge. The appellee, Ralph Rogers, was discharged by his employer, Willis Johnson Company, Inc., the appellant. Subsequently, Mr. Rogers filed a claim for unemployment benefits, which the employer contested. The Agency denied benefits to the appellee under the provisions of *Section 5(b)(1)* of the *Arkansas Employment Security Act* holding that he had been discharged from his last employment for misconduct in connection therewith. The employee appealed, and the Appeal Tribunal reversed the determination of the Agency and allowed Mr. Rogers unemployment benefits. On appeal from that decision, the Board of Review affirmed the determination of the Appeal Tribunal. The employer has now appealed to this court from the decision of the Board of Review allowing appellee unemployment benefits. Appellant contends that Mr. Rogers should be denied benefits under the provision of Section 5(b)(1) [Ark. Stat. Ann. § 81-1106(b)(1) (Repl. 1976)] as he was discharged from his last employment for misconduct within the meaning of the law.

The sole issue before this court is whether there is substantial evidence in the record to support the decision of the Board of Review. We are not permitted to hear the case de novo.

The record shows that there were three separate

hearings held before the Appeal Tribunal. Evidence was taken on November 14 and December 13, 1979, in Fort Smith, Arkansas, where the employee lived. Evidence was taken at Little Rock, Arkansas, on November 28, 1979, where the employer has its offices. The testimony shows that appellee-claimant had worked for the appellant-employer as a route salesman for approximately four months before he was discharged in July, 1979. Although he performed sales work, he was paid on a straight salary basis and was required to work a forty-hour week. The evidence submitted by the employer indicates the discharge was because Mr. Rogers would not adhere to a prescribed itinerary. The evidence, on behalf of the appellant, stressed that it was very important for Mr. Rogers to contact potential customers in the morning hours. The employer claimed that from time to time Mr. Rogers would not get to work at an early enough hour. The employer further contended that the claimant misrepresented information as to his daily stops by falsifying the log he was required to keep.

The record shows that the claimant acknowledged there were some mornings when he did not get an early start, but he said this was almost always with the full knowledge of his immediate supervisor in the Fort Smith area. Mr. Rogers further admitted that there were misrepresentations on his daily reports. He sought to justify this inaccurate data by saying that these reports were filed with the full and complete knowledge of his supervisor. The claimant also said that even the retail sales manager of the employer had mentioned that the daily logs were often misrepresented because the procedures used in completing them were somewhat outmoded and impractical. Claimant further contended that the sales work he was doing often called for irregular hours, but he felt that throughout his employment he had in fact worked forty hours a week. It was his position that he was doing a very satisfactory job for his employer. He claims that the reason originally given for his discharge was that he had too many outside interests. The employer acknowledged that when the claimant worked he performed his job very well.

The evidence at the hearing was contradictory. The Board of Review found that according to the greater weight of

the evidence the claimant generally performed his work to the best of his ability and that he did not knowingly or willingly act in any manner against the best interest or welfare of his employer. The Board of Review determined that the appellee was discharged from this last employment for the convenience of the employer, and for reasons other than misconduct in connection therewith within the meaning of the law.

Ark. Stat. Ann. § 81-1107(d)(7) states:

. . . In any proceeding under this subsection the findings of the Board of Review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive and the jurisdiction of said Court shall be confined to questions of law.

That has been amplified by case law:

. . . In a proceeding of this kind the Board's findings of fact are conclusive if supported by evidence; which of course means substantial evidence. *Terry Dairy Products Company, Inc.* v. *Cash*, 224 Ark. 576, 275 S.W. 2d 12 (1955).

Like the decision of any other administrative tribunal, decisions of the Board of Review are reversible on appeal to the courts only if they are found to be arbitrary, capricious, unreasonable, and without substantial evidence to support them or in cases of fraud or corruption. *City of Fort Smith* v. *Southwestern Bell Tel. Co.*, 220 Ark. 70, 247 S.W. 2d 474 (1952).

In the recent case of *Harris* v. *Daniels, et al*, 263 Ark. 897, 567 S.W. 2d 954 (1978), the Arkansas Supreme Court stated:

In appellate review . . . we must give the successful party the benefit of every inference that can be drawn from the testimony, viewing it in the light most favorable to the successful party, if there is any rational basis for the board's findings based upon a substantial evidence. (cases cited). Even though there is evidence upon which the Board of Review might have reached a different result, the scope of judicial review is limited to a determination

whether the Board could reasonably reach its results upon the evidence before it and a reviewing court is not privileged to substitute its findings for those of the board even though the court might reach a different conclusion if it had made the original determination upon the same evidence considered by the Board. (cases cited). Even if the evidence is undisputed, the drawing of inferences is for the board, not the courts. *Kessler* v. *Industrial Commission*, 27 Wis. 2d 398, 134 N.W. 2d 412 (1965).

Section 5(b)(1) of the Employment Security Law is codified at Ark. Stat. Ann. § 81-1106(b)(1) and reads as follows:

81-1106. Disqualification for benefits — For all claims filed on and after July 1, 1973, if so found by the Director, an individual shall be disqualified for benefits:

\* \* \*

(b) Discharged for misconduct. If he is discharged from his last work, for misconduct in connection with the work, such disqualification shall be for eight (8) weeks of unemployment as defined in subsection (i) of this section . . .

At 76 Am. Jur. 2d, *Unemployment Compensation*, § 52, it is stated at pages 945-946:

. . . misconduct within the meaning of an unemployment compensation act excluding from its benefits an employee discharged for misconduct must be an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employees, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

Mere inefficiency, unsatisfactory conduct, failure of good performance as the result of inability or incapacity, in-

advertencies, ordinary negligence or good faith errors in judgment or discretion are not considered misconduct for unemployment insurance purposes unless it is of such degree or recurrence as to manifest culpability, wrongful intent, evil design, or an intentional or substantial disregard of an employer's interests or of an employee's duties and obligations. 76 Am. Jur. 2d, *Unemployment Compensation*, § 54.

In keeping with the declaration of the state public policy of providing benefits to workers who are unemployed through no fault of their own as set forth in the Arkansas Employment Security Law (Ark. Stat. Ann. § 81-1101 et seq), the statutory misconduct provision of the Law must be given an interpretation in keeping with that declared policy. *Little Rock Furniture Mfg. Co.* v. *Commissioner of Labor*, 227 Ark. 288, 291, 298 S.W. 2d 56 (1957). It should not be so literally construed as to effect a forfeiture of benefits by an employee except in *clear* instances of misconduct. 76 Am. Jur. 2d, *Unemployment Compensation*, § 52.

On the record before us, it might well be argued that the appellee's misrepresentations of data on the daily logs and reports which he was required to keep constituted *clear* instances of misconduct within the meaning of the law. Certainly in the business world any misrepresentations of the nature admitted by this employee are serious. Even though the procedures used in completing daily logs may have seemed somewhat outmoded and impractical, as appellee claims, this would not justify an employee in falsifying reports which were required by the employer and considered by management to be necessary, current and practical. If this court was entitled to make the original determination of this case upon the same evidence considered by the Board of Review, we would probably reach a different conclusion and hold that this employee was not eligible to receive unemployment benefits; however, we are not privileged to substitute our findings of fact for that of the Arkansas Employment Security Board of Review. Even where the evidence is undisputed, the credibility of witnesses and the drawing of inferences is for the Board of Review, not the courts. *Harris* v. *Daniels, supra*, and cases there cited. In the case before us, the Board accepted and believed the explanations and excuses given by

Mr. Rogers for his admitted questionable activities. The Board of Review found as a matter of fact that appellee generally performed the work to the best of his ability and did not knowingly or willingly act in a matter against the best interest or welfare of his employer. While it may be hard for us to understand how the Board of Review could reach the conclusion it did, we are bound by the decision of the Board as we cannot say there is no substantial evidence in the record to support the decision. As noted, the evidence was in conflict, and although that part of it which supports the appellee-claimant is strongly disputed by the appellant-employer, we cannot say there was no substantial evidence to support the result reached by the Board of Review. Therefore we must affirm.

Hays, J., dissents.