Frank REYNOLDS *v.* Charles L. DANIELS, Director
of Labor, and PINE BLUFF CITY BUS COMPANY

E 80-230                                    614 S.W. 2d 525

Court of Appeals of Arkansas
Opinion delivered April 29, 1981

*Thad M. Guyer, Thomas J. Ginger*, and *Julius D. Kearney*, for appellant.

*Herrn Northcutt*, for appellees.

Tom Glaze, Judge. This case involves an appeal from a denial of unemployment compensation benefits to the claimant based on his misconduct under Ark. Stat. Ann. § 81-1106(b)(1)(Repl. 1976). The claimant was discharged by his supervisor as the result of an argument over wages and in which the claimant used the words "God damn it" and called his supervisor "a low down dirty son-of-a-bitch." Claimant argues on appeal that, as a matter of law, the use of profanity under the circumstances of this case, does not amount to misconduct. He also contends that the denial of benefits for the use of profane language is unconstitutional under the First Amendment of the United States Constitution as an undue burden on claimant's rights of free speech and expression.

Our court has defined misconduct in unemployment compensation cases to be an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of the standard of behavior which the employer has a right to expect of his employees. *Stagecoach Motel* v. *Krause*, 267 Ark. 1093, 593 S.W. 2d 495 (Ark. App. 1980), and *Parker* v. *Ramada Inn*, 264 Ark. 472, 572 S.W. 2d 409 (1978). We find no case in Arkansas which specifically addresses the issue of whether the use of profanity by an employee is misconduct as that term has been defined in the *Stagecoach* and *Parker* cases. This question has been considered by courts in other jurisdictions, and those courts have generally denied benefits where the employee directed vulgar or offensive language towards an employer or supervisor. *Olsgard* v. *Industrial Commission*, 548 P. 2d 910 (Colo. 1976); *Hayward* v. *Employment Security Commission*, 283 A. 2d 485 (Del. 1971); *Custom Meat Packing Company* v. *Martin*, 85 Idaho 374, 379 P. 2d 664 (1963); *Jackson* v. *Brown*, 136 So. 2d 329 (La. App. 1961); *Fetherson* v. *Unemployment Compensation Board of Review*, 196 Pa. Super. 498, 174 A. 2d 880 (1961); *Hoh* v. *Levine*,

331 N.Y.S. 2d 247, 39 App. Div. 2d 620 (1972). See, Anno. 92 A.L.R. 3d 106 (1979).

In the facts at bar, the Board of Review found the evidence was sufficient to show claimant's discharge was caused by his willful disregard of standards of behavior that an employer has a right to expect, and we agree. The profanity employed by the claimant was both unprovoked and directed at his immediate supervisor in front and within the hearing of other employees. Moreover, there is no evidence in the record that the claimant attempted to resolve the wage dispute by discussing the matter privately with his supervisor or employer. We hold the facts in this cause are sufficient as a matter of law to come within the statutory definition of misconduct, and we believe the Board of Review was correct in its denial of benefits to claimant on this issue.

The second issue raised and argued by the claimant is that his profane criticism of his supervisor is protected by the First Amendment to the United States Constitution. We do not agree. Our decision is premised on the United States Supreme Court decision in *Chaplinsky* v. *New Hampshire*, 315 U.S. 568, 571-572 (1942). In *Chaplinsky*, the court recognized certain instances in which the right to free speech does not apply and the relevant part of the court's ruling which is particularly applicable to the instant case states:

> [I]t is well understood that *the right to free speech is not absolute* at all times and under all circumstances. *There are certain well-defined and narrowly limited classes of speech*, the prevention and punishment of *which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words* — those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. [Emphasis supplied.]

The claimant argues that the effect of the *Chaplinsky* decision has diminished in view of the later Supreme Court holdings wherein the court greatly redefined what value is in the free speech and expression context. In sum, claimant contends that in light of these more recent decisions, what might be labelled mere profanity and vulgarity by contemporary societal standards now merit protection under the First Amendment. For this point, he relies on the cases of *Cohen* v. *California*, 403 U.S. 15, 26 (1971); *Gooding* v. *Wilson*, 405 U.S. 518 (1972); and *Lewis* v. *New Orleans*, 415 U.S. 130 (1974). Claimant's reliance on these cases is misplaced. The *Cohen* court specifically distinguished the *Chaplinsky* case, finding that Cohen had displayed a four-letter word critical of the draft system whereas the facts in *Chaplinsky* involved abusive epithets inherently likely to provoke violent reaction and directed to a person. Another vital distinction found in *Cohen* and not here is in *Cohen* the profane expression was made relative to a public issue, i.e., against the draft. There is a fundamental initial proposition that a major purpose of the First Amendment is to protect the free discussion of governmental affairs. *Cohen* v. *California, supra*, and *Bala* v. *Commonwealth of Pennsylvania Unemployment Compensation Board of Review*, 42 Pa. Cmwlth. 487, 400 A. 2d 1359 (1979). Here, although claimant argues otherwise, the Board of Review found that the supervisor's refusal to pay the claimant a day's wages evoked claimant's anger and profanity. Thus, the ensuing discharge of claimant resulted from a personal, private dispute, not one emanating from a public issue or from the criticism of a governmental matter or function.

The other foregoing cases cited by the claimant involve penal enactments which the Supreme Court held unconstitutional under the First Amendment because the language used in the enactments was overbroad and did not limit their application to "fighting words." In the case at bar, claimant is not challenging the constitutionality of the Arkansas Employment Security Law, or the statutory provision under which claimant was discharged, *viz.*, Ark. Stat. Ann. § 81-1106 (b) (1) (Repl. 1976). We are firm in our opinion that the rationale and holding in *Chaplinsky* is instructive and applicable to the facts before us. We, therefore, conclude that

the profanity expressed by claimant to his supervisor does not raise any constitutional issue. The terms used by claimant were both insulting and fighting words designed to provoke. The supervisor's decision to discharge the claimant because of the profanity was predictable and reasonable. Under the facts and circumstances of this cause, the claimant's conduct is in no way afforded the protection of the First Amendment and the free speech rights which it is intended to embrace.

Affirmed.