AGRICO CHEMICAL COMPANY *v.* William F.
EVERETT, Director of Labor, and Charles CRAIN

E 82-385                    657 S.W.2d 219

Court of Appeals of Arkansas
Division I
Opinion delivered September 28, 1983

*Michael R. Bearden; Oscar Fendler;* and *J. Patrick Cremin* and *Martin B. Langford* of *Hall, Estill, Hardwick, Gable, Collingsworth & Nelson,* Tulsa, Oklahoma, for appellant.

*Dewey Stiles,* by: *Alinda Andrews,* for appellees.

Tom Glaze, Judge. This is an Employment Security Division case in which the Appeal Tribunal and the Board of Review held the claimant was entitled to benefits. The employer appeals the Board's determination, arguing that the claimant is not entitled to benefits because he was discharged for misconduct. We affirm.

The law establishing what constitutes "misconduct in connection with the work" is well settled. Recently, in *Dillaha Fruit Co.* v. *Everett,* 9 Ark. App. 51, 652 S.W.2d 643 (1983), we said:

Arkansas case law requires that misconduct must be on account of wanton or willful disregard of the employer's rules and a disregard of the standard of behavior which the employer has a right to expect. Whether the acts of the employee are willful and wanton or merely result from inefficiency, unsatisfactory conduct, or unintentional failure of performance is a question of fact for the Board of Review. On appeal, the Board's findings are conclusive if they are supported by substantial evidence. Stated in different terms, this Court cannot substitute its findings for those made by the Board even though we might reach a different conclusion on the same evidence which was before the Board.

*Id.* at 52-53, 652 S.W.2d at 644 (citations omitted).

Here, the employer terminated claimant because he breached a confidentiality. The narrow issue is whether the breach was willful or unintentional. If claimant's actions were willful or wanton, he was not entitled to benefits; if his qualitative conduct was neither willful nor wanton, he was entitled to benefits. In viewing the evidence in the light most favorable to the successful party (claimant), *Dillaha Fruit Co.* v. *Everett, supra,* we believe the evidence substantially supports the Board's finding that the claimant's actions were unintentional and not misconduct under existing Arkansas case law.

The claimant was employed as one of three store clerks whose duties included receiving packages or mail sent to the company. After receiving items, the clerks forward the packages or envelopes to the designated person or department. The item precipitating the present controversy was a large envelope delivered by Federal Express. No employee's or department's name appeared on the envelope; nor did the air freight bill designate a specific addressee. The claimant accepted and receipted the envelope, and according to the company's standard procedure, opened it to examine the contents to determine where the envelope should be forwarded. A co-worker, Richard McNear, asked claimant to whom the papers inside the envelope were addressed, and claimant replied, "It looks like it's for Larry Detwiler." He continued to leaf through the papers and saw more names, including his own. After seeing his name, claimant said that he guessed it was not for Larry Detwiler, and then he read the words, "Position eliminated," and asked, "Well, why is this for me?" After reading further, he related the papers reflected his position had been eliminated. He also discovered the papers were intended for John Cressman, the company's Industrial Relations Manager. Claimant discussed the matter with McNear, subsequently placed the papers back into the envelope and personally delivered the envelope to Cressman's secretary. Sometime prior to delivering the papers to Cressman's office, the claimant and his co-workers discovered the envelope had been stamped "confidential," but the stamp had been obscured by the bill of lading which was placed over it. Later the same day, claimant was terminated because he had revealed the contents of the envelope to his co-workers.

The evidence before the Board clearly reflects that four co-workers were within hearing range of where the claimant was positioned when he received the envelope and read that part of its contents indicating that he and some other employees would be laid off. The testimony is undisputed that claimant's interception of the envelope was both inadvertent and coincidental. The employer argues, however, that as soon as claimant read and discovered the confidential nature of the papers, he should have re-inserted the papers into the envelope and delivered it to his super-

visor. The claimant counters, arguing that his supervisor was not present at the time the incident occurred, and claimant's discussion of the matter with McNear was proper and normal procedure in view of their supervisor's absence. He also testified that he was in shock and did not fully understand the confidential nature of what he had read until he was discharged later by his supervisor and Mr. Cressman. In support of claimant's version of what occurred, other co-workers testified that they did not know if claimant, after opening the envelope, was reading its contents to himself or to another co-worker. Undisputedly, the claimant appeared upset at the time. Claimant asserted that he did not purposely discuss the matter with anyone except McNear. From this evidence, the Board could (and did) reasonably infer claimant's actions were not willfully designed to relate confidential company information to others. Such a factual inference was a proper one for the Board to make, and even though we may have found otherwise, we cannot say the decision reached by the Board was not supported by substantial evidence.

In conclusion, we note the employer's reliance on two Pennsylvania cases wherein unemployment benefits were denied because the claimants breached their employers' trust and confidentiality. *See Petery* v. *Unemployment Compensation Board of Review*, 42 Pa. Commw. 464, 400 A.2d 1372 (1979); and *Parsons* v. *Unemployment Compensation Board of Review*, 50 Pa. Commw. 378, 397 A.2d 842 (1979). Neither *Petery* nor *Parsons* is applicable to the facts here. In both Pennsylvania cases, the claimants held management-level positions and had access to (or were given) confidential information. In *Petery*, the claimant disclosed such information in direct contravention to her supervisor's mandate not to do so.[1] In *Parsons*, the claimant pirated payroll information and stealthily divulged it to others. These cases

---

[1]Agrico Chemical Company argues claimant violated an earlier agreement he signed entitled "Employee Invention and Confidential Agreement." The substance of this agreement appears to cover inventions, improvements and discoveries. However, assuming *arguendo* the agreement covered the information divulged here, such a conclusion does not in itself require a finding claimant willfully or wantonly divulged the information. Thus, either the Board found the agreement was not relevant

in no significant manner compare with or control the situation posed at bar.

Affirmed.

COOPER and CLONINGER, JJ., agree.

to the confidential information involved here or the Board, having found it was, concluded the claimant did not willfully or wantonly breach the agreement.