SHIPLEY BAKING COMPANY *v.* Dewey STILES, Director of Labor, and Jerry D. SMITH

E 85-70                                          703 S.W.2d 465

Court of Appeals of Arkansas
En Banc
Opinion delivered February 12, 1986

*Bethell, Calloway, Robertson & Beasley*, for appellant.

*Allan Pruitt*, for appellee.

LAWSON CLONINGER, Judge. The sole issue in this appeal is whether the decision of the Board of Review that appellee Jerry D. Smith was not discharged from his employment with appellant Shipley Baking Company for misconduct in connection with his work pursuant to Ark. Stat. Ann. § 81-1106(b)(1) (Supp. 1985) was supported by substantial evidence. We find that the record does not provide evidence of such substance to support the Board's ruling, and we reverse its decision.

Appellee Smith filed his claim for unemployment benefits in February, 1985, indicating that he had been discharged for failing to write a report on an air leak in a tractor's brake system. In its initial determination, the Employment Security Division of the Department of Labor disqualified him from receiving benefits under Ark. Stat. Ann. § 81-1106(b)(1) (Supp. 1983) on a finding that he was discharged for misconduct in connection with his work. Smith appealed the decision, and, in April, 1985, the ESD Appeal Tribunal reversed the agency determination, allowing him benefits. In May, 1985, the Board of Review affirmed the Appeal Tribunal's decision and found that appellee Smith had been discharged for reasons other than misconduct in connection with his work. From that ruling appellant brings this appeal.

In order for an employee's action to constitute "misconduct," it must be an act of wanton or willful disregard for

the employer's interests, a deliberate violation of the employer's rules, or a disregard of the standard of behavior that the employer has a right to expect of his employees. *St. Vincent Inf.* v. *Ark. Emp. Sec. Div.*, 271 Ark. 654, 609 S.W.2d 675 (Ark. App. 1980). Mere inefficiency, unsatisfactory conduct, failure of good performance as the result of inability or incapacity, inadvertence, and ordinary negligence or good faith errors in judgment or discretion are not considered misconduct for unemployment insurance purposes unless they are of such degree or recurrence as to manifest culpability, wrongful intent, evil design, or an intentional or substantial disregard of an employer's interests or of an employee's duties and obligations. *Dillaha Fruit Co.* v. *Everett*, 9 Ark. App. 51, 652 S.W.2d 643 (1983); *Nibco, Inc.* v. *Metcalf*, 1 Ark. App. 114, 613 S.W.2d 612 (1981).

On appeal, the findings of fact of the Board of Review are deemed conclusive if they are supported by substantial evidence. *Feagin* v. *Everett*, 9 Ark. App. 59, 652 S.W.2d 839 (1983). Even though there is evidence upon which the Board might have reached a different result, the scope of judicial review is limited to a determination of whether the Board could reasonably reach its decision upon the evidence before it; we may not substitute our findings for those of the Board even though we might have reached a different conclusion had we made the original determination upon the same evidence. *Id*. This is not to say, of course, that our function on appeal is merely to ratify whatever decision is made by the Board of Review. It is essential that the Board's findings of fact be supported by substantial evidence upon which a particular conclusion could reasonably have been reached. We are not at liberty to ignore our responsibility to determine whether the standard of review has been met.

In the present case, the Director of Labor concedes that appellee Smith at times may have exercised poor judgment in connection with his work but denies that his actions were of a willful, deliberate nature. We must examine the record in the case to determine whether this view of the matter can be sustained.

Appellee Smith was hired as a tractor-trailer driver by appellant in May, 1984. He delivered bakery products to Ozark, Russellville, and other communities outside the Fort Smith area. He received instructions regarding various responsibilities, such

as loading the truck, inspecting it upon completion of his deliveries, and notifying his employer of any problems.

The record reveals that appellee Smith received four letters of reprimand before finally receiving a letter of termination. In August, 1984, Smith received a written warning concerning his refusal to load his truck despite his having been specifically instructed to do so by his sales supervisor. Smith received another letter of reprimand in September, 1984, when he took home paperwork that was supposed to remain at the bakery. When told by a fellow employee that this action created a problem at the bakery, he was reported as having said, "So what if it gives them a little extra work?" Also in September, 1984, Smith received a letter of reprimand for having failed on one occasion to report to work and to notify appellant that he would be absent, and for having been one to two hours late for work on seven different occasions. This letter further advised him that if his record did not improve he would be given a three day layoff without pay. In November, 1984, Smith received a letter of reprimand and disciplinary layoff for failing to report a flat tire on his trailer to his supervisor. He received notice of termination in February, 1985, through a letter that called to his attention his failure to notify appellant that he had continued to drive his tractor and trailer after the tractor brake had broken off, causing a rupture and leak in two air lines on the tractor.

The plant superintendent also testified that on four different occasions, despite his having instructed Smith not to do so, appellee persisted in stopping his engine while using his hydraulic lift to unload his truck, thus causing the battery to run down. As a result, appellant had to call a tow truck to move Smith's tractor and trailer so that other waiting vehicles could be unloaded. Although the plant manager had issued a general directive requiring engines to be shut off when company vehicles were parked, appellee had received specific orders from the superintendent to continue running his motor when unloading. Moreover, on four separate occasions Smith had allowed the battery to run down; such conduct suggests at the very least a willful disregard for his employer's interests. *Cf. Hall* v. *Daniels*, 269 Ark. 748, 600 S.W.2d 436 (1980).

We believe, with the accumulated evidence of appellee

Smith's behavior before it, that the Board of Review could not reasonably have reached its decision. Without departing from the bounds limiting the scope of our review, we hold that the Board's finding that Smith had been discharged for reasons other than misconduct in connection with work is not supported by substantial evidence. The conduct of the claimant was of such nature and of such degree and recurrence as to manifest intentional and substantial disregard of his employer's interests and of claimant's duties and obligations as an employee. The Board of Review's decision must be reversed.

CRACRAFT, C.J., and COOPER, J., dissent.

JAMES R. COOPER, Judge, dissenting. I dissent from the majority opinion because I am of the opinion that it violates our standard of review. We are required to affirm the Board of Review where its decision is supported by substantial evidence, *Harris* v. *Daniels*, 263 Ark. 897, 567 S.W.2d 954; *Hodnett* v. *Daniels*, 271 Ark. 479, 609 S.W.2d 172 (Ark. App. 1980), and, although I might have decided this case differently had I been the fact-finder, I believe that there is substantial evidence to support the Board's decision.

CRACRAFT, C.J., joins in this dissent.