LITTLE ROCK WASTEWATER UTILITY *v.* Dewey STILES, Director of Labor, and Charles HILPERT

E 86-48                                    724 S.W.2d 199

Court of Appeals of Arkansas
En Banc
Opinion delivered February 25, 1987

*House, Wallace, Nelson & Jewell, P.A.*, by: *Don F. Hamilton* and *Carolyn B. Witherspoon*, for appellant.

*Allan Pruitt*, for appellee.

JAMES R. COOPER, Judge. The appellee, Charles Hilpert, was discharged from his job with the appellant, Little Rock Wastewater Utility. According to the appellant he was discharged because he failed to call in his absence for three consecutive days and for insubordination. The Board of Review reversed the Appeals Tribunal, finding that Hilpert was not discharged for intentional or willful misconduct and therefore, he was entitled to full unemployment benefits. On appeal, the appellant argues that the Board's finding is unsupported by substantial evidence. We disagree with the appellant's contention, and affirm the Board's decision.

In unemployment compensation cases, the findings of the Board of Review as to the facts are conclusive on appeal if they are supported by substantial evidence. *Victor Industries Corp.* v. *Daniels*, 1 Ark. App. 6, 611 S.W.2d 794 (1981). Substantial evidence is valid, legal and persuasive evidence; such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Victor Industries, supra.* Even where there is evidence from which the Board could have reached a different result, the scope of judicial review is limited to a determination of

whether the Board could reasonably reach its decision upon the evidence before it; we may not substitute our findings for those of the Board even though we might have reached a different conclusion had we made the original determination upon the same evidence. *Shipley Baking Co.* v. *Stiles*, 17 Ark. App. 72, 703 S.W.2d 465 (1986).

In the case at bar, the evidence shows that Hilpert had been employed by the appellant for approximately eight years. When Hilpert was hired he mentioned that he had a drinking problem. Hilpert stated that he had never been intoxicated on the job, but that he had called in sick a few times because of the effects of alcohol.

In 1980, Hilpert received a warning concerning his drinking problem. The written notice stated that "cover" would no longer be provided for his problems and that if his drinking problem continued he would be discharged. Milton Wylie, who at that time was the maintenance director, testified that the reprimand meant that Hilpert was to take his Antabuse tablets in the office each morning and join a chapter of Alcoholics Anonymous. He further stated that Hilpert understood these conditions, even though they were not specified in writing. The 1980 reprimand resulted from Hilpert's being in a detoxification unit and being absent from work. Michael Jones, who became the director of maintenance in 1981, testified to essentially the same facts. It is uncontradicted that Hilpert suffers from alcoholism, and that the employee did not follow up on the conditions which the employer stated were part of the 1980 reprimand.

Hilpert testified that on Sunday, October 10, 1982, he had been drinking and began feeling extremely ill. He entered the hospital on that day to have tests run relating to liver damage, pancreas malfunction, and low blood sugar. He testified that he did not call his supervisor on Sunday because he knew that his employer took a dim view of his drinking. Hilpert stated further that on Monday, October 11, his wife was instructed to call in for him and report his illness and absence and that she had done so. However, Jones testified that the telephone call was never received. On October 12, Hilpert's wife called about forty-five minutes after Hilpert was to report for work and told them that her husband was ill and was going to have some tests run at the

hospital. On Wednesday, October 13, Hilpert called at about 3:00 p.m. and stated that the medical staff recommended that he enter the alcohol abuse program at the hospital and would be in detoxification for the next 28 days. At the time Hilpert had 25.9 days of sick leave accumulated.

Hilpert was discharged on October 20, 1982 because he had failed to personally notify his supervisor of his absences on October 11, 12 and 13 prior to the start of work. The appellant also alleged insubordination because Hilpert had failed to heed the 1980 reprimand.

The Appeal Tribunal specifically found that Hilpert's failure to report to work was beyond his reasonable control, but that his failure to properly notify his employer constituted misconduct. The employer's testimony showed that Hilpert had adequate sick leave accumulated to cover his hospitalization; that he had never been seen drinking on the job, and that he had no history of absenteeism or tardiness. The employer representatives denied that alcoholism was an illness, but confirmed that Hilpert's two previous hospitalizations for alcoholism (in the previous six years) had been covered by sick leave. Hilpert testified that he had been an alcoholic for years and that he was simply trying to get help in treating his alcoholism, which he believed was a disease. On this evidence, the Board found that Hilpert was not guilty of misconduct in connection with the work.

Mere inefficiency, unsatisfactory conduct, failure of good performance as the result of inability or incapacity, inadvertence and ordinary negligence or good faith errors in judgment or discretion are not considered misconduct for unemployment insurance purposes unless they are of such a degree or recurrence as to manifest culpability, wrongful intent, evil design, or an intentional or substantial disregard of an employer's interests or of an employee's duties and obligations. *Shipley Baking Co., supra.* We agree with the Board's finding that Hilpert's admission into a hospital for treatment of his alcoholism did not display any evil design or wrongful intent. Moreover, in light of Hilpert's hospitalization at the times he was to report to work and the evidence of efforts to notify the employer of his absence, we do not think his failure to follow company guidelines and give *advance* notice that he would be absent rises to the level of misconduct.

■ Finally, we note the conflict in the testimony concerning whether alcoholism is an illness or disease. The Board did not decide this question, nor did it need to do so. Hilpert was hospitalized, as he had been on two other occasions, for treatment of alcoholism, and, as on the other two occasions, had adequate sick leave accumulated to cover his absence. The evidence was in conflict concerning his notification of the appellant, and the resolution of conflicts in the testimony, as well as the weight to be given the past practices of the parties, was for the Board of Review, not this Court, to resolve.

Affirmed.

CORBIN, C.J., dissents.

DONALD L. CORBIN, Chief Judge, dissenting. I dissent from the majority opinion. I find that there is not substantial evidence in the record to support the Board's finding that Hilpert's acts did not constitute "misconduct" under Ark. Stat. Ann. § 81-1106(b) (Supp. 1985). This court defined "misconduct" as follows:

> In order for an employee's action to constitute "misconduct," it must be an act of wanton or willful disregard for the employer's interest, a deliberate violation of the employer's rules, or a disregard of the standard of behavior that the employer has a right to expect of his employees.

*Shipley Baking Co.* v. *Stiles*, 17 Ark. App. 72, 703 S.W.2d 465 (1986) (citation omitted). The Board and the majority of this court have failed to take into consideration the uncontradicted testimony that Hilpert did not abide by the company's employee guidelines.

I recognize that the Board, in its lawful capacity as factfinder, has resolved a conflict in the testimony by finding that Hilpert notified the employer that he would not appear for work. The error committed by the Board in this case, and affirmed by the majority of this court, is the failure to consider that testimony by Hilpert and the uncontradicted evidence which established that Hilpert was late in calling in his absence on each of the three days in question, clearly a violation of the company employee guidelines, which Hilpert admitted he had agreed to and signed.

There was absolutely no contradiction in the testimony of

these acts of misconduct. The most conclusive evidence of misconduct, in my mind, is the admission by Hilpert, on the witness stand, that he could have called in on October 10th, the day he went in to the hospital, to inform his employer that he would not be at work the following day, but he did not call. Hilpert testified, "I could have called Mike [Jones, his supervisor]. I don't know why I didn't. I was rational at that time and was capable of making decisions." Hilpert went on to testify that he didn't call his supervisor to tell him that he would be absent because he was afraid of what his employer would do when they found out that he'd been drinking again. This admission by Hilpert shows that Hilpert's acts were clearly a deliberate violation of the employer's rules and show a complete disregard of the standard of behavior that the employer had a right to expect of its employees.

For the reasons stated above I dissent from the majority decision.